J-A28026-25

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| HENRY MADERA, JR. | : | |
| | : | |
| Appellant | : | No. 39 MDA 2025 |

Appeal from the Judgment of Sentence Entered December 17, 2024
In the Court of Common Pleas of Berks County Criminal Division at
No(s): CP-06-CR-0000702-2023

BEFORE: KUNSELMAN, J., McLAUGHLIN, J., and LANE, J.

MEMORANDUM BY McLAUGHLIN, J.:     **FILED: MARCH 12, 2026**

Henry Madera, Jr. appeals from the judgment of sentence entered following his convictions for third-degree murder, firearms not to be carried without a license, perjury, false swearing, four counts of aggravated assault, and seven counts of recklessly endangering another person.[1] Madera challenges the sufficiency of the evidence and the discretionary aspects of his sentence. We affirm.

The Commonwealth charged Madera and his co-defendant, Anthony Michaelan Boria, following a shooting that occurred in March 2022. A third co-defendant, Julian Evans, was also charged. Madera and Boria proceeded to a joint non-jury trial.

---

[1] 18 Pa.C.S.A. §§ 2502(c), 6106(a)(1), 4902(a), 4903(a)(1), 2702(a)(1), and 2705, respectively.

The trial court aptly summarized the evidence presented at trial as follows:

On March 14, 2022, a large group of teenagers went to Brookline Park, near the intersection of Kenhorst Boulevard and Lancaster Avenue, Reading, Berks County, Pennsylvania to watch a fistfight between Gerson Caicedo and Jeniel Lozano-Gonzalez ('Ace'). At approximately 7:30pm, the crowd gathered in the park. The majority, if not all, of the spectators arrived in three different groups. The first group met up with 'Ace' and included Tyshawn Harris, Jonissa Baez, [L]exus[2] Alvarado, Reakwon Alvarado, and Kendall Blunt. The second group included Amiere Bibbs and Marcus Landis, who also joined with 'Ace'. A third group accompanied the other participant, Gerson Caicedo and included Henry Madera, Anthony Boria, and Julian Evans. This third group passed by the park in Boria's car, a red sedan, which slowed down and then continued past, parked nearby and returned on foot. The approximately 8-10 people with Ace were on the 'pavilion side' and the remaining 4 people, including [Caicedo], were on the other side of the park.

The fistfight began between the two boys with the spectators on their respective sides. Madera, Boria, and Evans had fanny packs across their chests. Marcus Landis had a handgun, a .40 caliber Taurus pistol, in his hoodie pocket. During and after the fistfight, Marcus Landis began yelling back and forth with someone on the other side of the park (believed to be Boria). Marcus Landis testified that the person had his hands like he was trying to pull something out. He yelled 'what are you looking [at]' and that is when he pulled out at least a part of his loaded weapon, so it was visible. During the verbal back and forth, Evans was described as 'clutching'. Jonissa Baez and [L]exus Alvarado testified Marcus displayed the weapon and may have racked the slide. Boria, Madera, and Evans reached toward their fanny packs. Each fanny pack concealed a 9mm weapon. Boria, Madera, and Evans all began shooting their 9mm handguns wildly discharging a total of 43 shots in a period of approximately 8 seconds. Many shell casings were recovered and were primarily clustered into three separate groupings, although the Commonwealth could not establish which grouping was attributable to Madera as opposed

---

[2] **See** N.T., Trial, at 232.

to Boria, or Evans. Marcus Landis denied shooting his gun. No ejected .40 caliber cartridges, unspent or spent, were found in the park. A cell phone video of the incident was introduced as Commonwealth Exhibit 11.

As a result of the shooting, Amiere Bibbs was killed. Jonissa Baez was shot in the back (exiting through her stomach), shot in the leg (splitting her femur) and grazed by a third bullet. The injuries to Jonissa Baez required two different surgeries and physical therapy. Ms. Baez still had lingering effects including extremity weakness and seizures, at the time of trial. Marcus Landis was shot through the leg requiring six surgeries and has a permanent drop foot. Kendall Blunt was shot in the buttocks.

A grand jury was empaneled and Madera, Boria, and Evans were called to testify. Each denied being at the park on the evening in question. Neither Madera nor Boria were able to possess a license to carry a firearm due to age requirements since they were both under 21 years old at the time of the incident.

Memorandum Opinion, filed 6/17/25, at 2-4.

Madera, Boria, and Evans each testified[3] that they had acted in self-defense. They also testified that they had not discussed whether to bring firearms that evening and had not planned to shoot anyone.

The court found Madera and Boria guilty of the above-referenced offenses. It rejected the self-defense claims. It also rejected an argument that the defendants could not be convicted because the Commonwealth failed to prove whose bullets struck the victims, finding that the defendants were liable as accomplices. The court imposed an identical sentence on Madera and Boria:

---

[3] Evans testified for the Commonwealth.

an aggregate term of 23 to 46 years' incarceration. Madera did not file any post-sentence motions. This timely appeal followed.[4]

Madera raises the following issues:

1. Was the evidence presented at trial sufficient to sustain the conviction of Murder in the Third Degree and Aggravated Assault, where the evidence presented at trial demonstrated that [Madera] acted in self-defense pursuant to 18 PA.C.S.A. § 505, and therefore did not act with malice[?]

2. Was the evidence presented at trial insufficient as a matter of law to sustain a conviction for Murder of the Third degree because the evidence presented at trial was insufficient to show that [Madera] fired a shot which fatally wounded the decedent or a shot which wounded a bystander, and there was insufficient evidence that he was an accomplice thereto[?]

3. Was the sentence imposed by the trial court unduly harsh and manifestly excessive by imposing consecutive jail sentences of 23-46 years, and failing to consider the rehabilitative needs of [Madera], [Madera]'s age, and [Madera]'s amenability to treatment[?]

Madera's Br. at 9 (proposed answers omitted).

Madera's first two issues challenge the sufficiency of the evidence. Our standard of review for such a claim is settled:

The standard we apply in reviewing the sufficiency of the evidence is whether viewing all the evidence admitted at trial in the light most favorable to the verdict winner, there is sufficient evidence to enable the fact-finder to find every element of the crime beyond a reasonable doubt. In applying the above test, we may not weigh the evidence and substitute our judgment for the fact-finder. In addition, we note that the facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak

---

[4] Boria also appealed. *See* No. 481 MDA 2025.

and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances. The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence. Moreover, in applying the above test, the entire record must be evaluated and all evidence actually received must be considered. Finally, the finder of fact while passing upon the credibility of witnesses and the weight of the evidence produced, is free to believe all, part or none of the evidence.

This standard is equally applicable to cases where the evidence is circumstantial rather than direct so long as the combination of the evidence links the accused to the crime beyond a reasonable doubt. Although a conviction must be based on more than mere suspicion or conjecture, the Commonwealth need not establish guilt to a mathematical certainty.

*Commonwealth v. Brockman*, 167 A.3d 29, 38 (Pa.Super. 2017) (citation omitted).

Madera first argues the evidence was insufficient to disprove his claim of self-defense. Madera argues Evans and Boria both testified that Landis was threatening them and pointed his firearm at them. Madera argues Alverado's testimony confirms that Landis was facing the defendants when he pulled out his firearm and racked it. Madera points out that Landis admitted that he was the first person to display his firearm and stated that he would only display a firearm if he intended to use it. Madera highlights Landis's testimony that his gun was loaded and cocked at the time he displayed it.

Madera notes his testimony that when he saw Landis display his firearm, he began running towards the playground. When he heard gunshots and saw flashes coming from Landis's direction, he believed Landis was shooting at

him, had nowhere to take cover, and returned fire. Madera points out that Boria, and not he, fired the first shot.[5] Madera contends the location of the spent shell casings confirm that he initially retreated. Madera's Br. at 23-24 (stating investigator testified approximately 13 to 15 shell casings were found in the 30-40 foot area between the pavilion where Landis was and the playground towards where Madera was retreating) (citing N.T., Trial, at 80-81).

Madera argues the above evidence proves that Landis was the aggressor and provoked the use of deadly force by displaying and pointing a handgun; that Madera was retreating until the gunfire erupted; and that Madera reasonably believed he was in imminent danger of death or serious bodily injury when he shot back towards Landis in self-defense.

> Self-defense is a complete defense if
>
> 1) the defendant reasonably believed that he was in imminent danger of death or serious bodily injury and that it was necessary to use deadly force to prevent such harm; 2) the defendant did not provoke the threat that resulted in the slaying; and 3) the defendant did not violate a duty to retreat.

***Commonwealth v. Jones***, 271 A.3d 452, 458 (Pa.Super. 2021) (citing 18 Pa.C.S. § 505(b)(2)).

If there is evidence justifying a finding that the defendant acted in self-defense, the Commonwealth has the burden "to prove beyond a reasonable doubt that the defendant's act was not justifiable self-defense."

---

[5] ***See*** N.T. 355 (Boria admitting he fired the first shot).

*Commonwealth v. Smith*, 97 A.3d 782, 787 (Pa.Super. 2014) (citation omitted). The Commonwealth may meet this burden by establishing any of the following: "1) the accused did not reasonably believe that he was in danger of death or serious bodily injury; or 2) the accused provoked or continued the use of force; or 3) the accused had a duty to retreat and the retreat was possible with complete safety." *Id.* (citation omitted). Disbelief of a defendant's testimony alone will not satisfy the Commonwealth's burden to disprove the defense. *See Commonwealth v. Torres*, 766 A.2d 342, 345 (Pa. 2001) (stating that "the Commonwealth cannot sustain its burden of proof solely on the fact finder's disbelief of the defendant's testimony"). However, the fact-finder does not have to credit the evidence supporting the self-defense claim. *See Commonwealth v. Houser*, 18 A.3d 1128, 1135 (Pa. 2011).

Here, the trial court rejected Madera's self-defense claim. It opined:

> Neither Madera nor Boria was a participant in the fight. They had no reason to be present other than as a spectator. They both chose to attend the fight and to bring guns with them concealed in fanny packs. Both seemed to indicate that they planned to defend [Caideco] if needed. . . . Madera and Boria testified about the reasons for bringing their own gun but also believed that the other (and [Evans]) was armed. All three co-defendants were described by witnesses as having fanny packs on their chest where the guns were drawn from at the time of the shooting. The Court found Marcus Landis credible when he stated that while he displayed his gun, he did not point it at anyone. His actions, while enough to give pause to others, were not provoking in a way to escalate the situation to require the use of deadly force. Neither Boria nor Madera were credible when they indicated Landis fully displayed and racked his gun. It was

not reasonable to believe that Madera, Boria, or Evans were in danger of death or serious bodily injury to justify escalating a fist fight into a wild west shooting gallery. The evidence did not establish that any bullets were discharged by Landis or anyone on 'Ace's side.' Once Boria, Madera, and Evans pulled out their guns, Landis turned and ran. Any or all three of them could have similarly chosen to leave but instead each pulled out his gun and discharged a barrage of bullets in concert. Amiere Bibbs, the deceased, was struck in the chest (as well as his leg) and was entirely unarmed. There was no retreat by the three shooters until they each had fully discharged their weapons. While it is unclear which of the three (Madera, Boria, or Evans) discharged the first bullet, this does not justify the actions of Madera. Having repeatedly viewed the cellphone video of the incident, and considering the collaborative actions of Madera, Boria, and Evans, the amount of shots from each gun, the indiscriminate nature of the discharge of guns (not focused on one intended target), the fact that the injuries to Landis, Baez, and Blunt were all from the back as they (and the other people present) were fleeing, the Court found that the Commonwealth had properly negated the self-defense claim.

Memorandum Op. at 8-9 (footnote omitted).

We agree that the Commonwealth presented sufficient evidence to disprove Madera's self-defense claim beyond a reasonable doubt. The fact-finder was free to accept the testimony that Landis had displayed his firearm, but had not pointed it at anyone, and was free to reject the co-defendants' self-serving testimony to the contrary. The Commonwealth's evidence was also sufficient to prove that Landis did not fire any shots, but turned and ran once the shooting began. The Commonwealth thus disproved that Madera reasonably believed he was in fear of death or imminent bodily injury. Furthermore, the evidence was sufficient to establish Madera's response to

hearing gunshots — *i.e.*, shooting a large number of bullets into a crowd of people who were running away — was an unreasonable escalation of the use of deadly force. Finally, the fact-finder was free to reject Madera's testimony that he could not continue to retreat once Boria began firing. Madera's sufficiency claim fails.

In his second issue, Madera argues the evidence was insufficient to prove third-degree murder and aggravated assault because the Commonwealth was unable to prove that any of the shots he fired (as opposed to those fired by his co-defendants) struck any of the victims. He also contends the evidence was insufficient to establish his guilt under accomplice theory because there was no shared criminal intent. Madera argues there was no evidence that the three planned the shooting or discussed bringing their weapons. He also points out that each testified that he had a firearm for his own protection and to protect Caicedo. He further argues that to convict him of third-degree murder or aggravated assault under accomplice theory, the Commonwealth needed to prove he acted with malice, but contends the facts here support his claim of self-defense.

"A person is legally accountable for the conduct of another person when . . . he is an accomplice of such other person in the commission of the offense." 18 Pa.C.S.A. § 306(b)(3); *see also Commonwealth v. Bradley*, 392 A.2d 688, 690 (Pa. 1978) ("the actor and his accomplice share equal responsibility for" the commission of a criminal act). A person may be found guilty of an

offense as an accomplice where: 1) the individual intended to promote or facilitate the commission of the underlying offense, and 2) the individual solicits another person to commit the offense or "aids or agrees or attempts to aid such other person in planning or committing" the offense. 18 Pa.C.S.A. § 306(c)(1). These elements may be proven by wholly circumstantial evidence. *See Commonwealth v. Kimbrough*, 872 A.2d 1244, 1251 (Pa.Super. 2005) (*en banc*).

Additionally, no explicit agreement between the principal and accomplice is required – "only aid." *Id.* The fact-finder may infer a shared criminal intent "from a defendant's words or conduct or from the attendant circumstances." *Commonwealth v. Spotz*, 716 A.2d 580, 586 (Pa. 1998). Where there are multiple offenders, the Commonwealth is not required to establish the role of each accomplice. *See Bradley*, 392 A.2d at 689-90 (stating where evidence established that one co-defendant was the principal and the other was the accomplice in shooting of storekeeper, but was insufficient to establish who fired, "it was not incumbent upon the prosecutor to identify their roles" since both share responsibility for the act under accomplice liability theory). Rather, "[t]he least degree of concert or collusion is sufficient to sustain a finding of responsibility as an accomplice." *Commonwealth v. Coccioletti*, 425 A.2d 387, 390 (Pa. 1981) (holding it unnecessary to establish which of two defendants fired the fatal shot, where the other would be equally responsible as an accomplice).

The Commonwealth must prove the accomplice acted "with the same *mens rea* as his principal when 'causing a particular result is an element of an offense.'" ***Kimbrough***, 872 A.2d at 1252 (quoting 18 Pa.C.S.A. § 306(d)). However, to prove third-degree murder or aggravated assault, the Commonwealth need only establish malice, not specific intent. ***Commonwealth v. McHale***, 858 A.2d 1209, 1213 (Pa.Super. 2004). Thus, to prove a person guilty as an accomplice to third-degree murder or aggravated assault, the Commonwealth must prove both the principal and the accomplice acted with malice. ***See Kimbrough***, 872 A.2d at 1252.

Malice is a "wickedness of disposition, hardness of heart, cruelty, recklessness of consequences, and a mind regardless of social duty, although a particular person may not be intended to be injured." ***Commonwealth v. Kling***, 731 A.2d 145, 147-48 (Pa.Super. 1999) (citation omitted). "Malice is established where an 'actor consciously disregard[s] an unjustified and extremely high risk that his actions might cause death or serious bodily harm.'" ***Commonwealth v. Devine***, 26 A.3d 1139, 1146 (Pa.Super. 2011) (citation omitted) (alteration in original). The evidence of malice is sufficient where the defendant intentionally aims and fires a loaded gun at a victim. ***See Commonwealth v. Jones***, 271 A.3d 452, 460 (Pa.Super. 2021); ***Commonwealth v. Young***, 431 A.2d 230, 232 (Pa. 1981).

The trial court found Madera guilty as an accomplice. It concluded that "[t]he concerted actions of the three co-defendants and the totality of the

attendant circumstances established that each defendant's participation was with intent of facilitating commission of the crimes of Murder of the Third Degree, [and] Aggravated Assault[.]." Memorandum Opinion at 11. The court reasoned,

> Madera, Boira, and Evans all arrived together with [Caicedo]. Boria testified that he was asked to come along "to make sure he is all right." While Madera and Boria asserted they did not discuss with the others whether or not to bring a gun, Madera admitted he believed the other two were armed. All three kept their firearms in a fanny pack across their chest. The weapons were pulled almost in unison and the 43 bullets were discharged across the field in approximately 8 seconds.

*Id.* at 10-11 (citation to N.T. omitted).

We agree that the Commonwealth sufficiently presented evidence that Madera had the requisite intent to commit third-degree murder and aggravated assault, *i.e.*, malice. The evidence was that within eight seconds, Madera and his co-defendants shot their firearms 43 times into a group of people, striking seven of them. To the extent Madera relies on his self-defense claim to negate the sufficiency of the evidence of malice, we have already determined that the Commonwealth presented sufficient evidence to disprove that defense.

The evidence was also sufficient to prove that Madera acted as an accomplice. By acting in concert with his co-defendants, Madera, at the very least, attempted to aid them in committing third-degree murder and aggravated assault. Contrary to Madera's argument, the Commonwealth was

not required to prove Madera and his friends had an explicit agreement in advance. **Kimbrough**, 872 A.2d at 1251.

For his final issue, Madera challenges the discretionary aspects of his sentence. He claims his sentence is excessive given his age, character, and the facts of the case. We do not address this claim because it is waived.

This Court may not address the merits of a discretionary sentencing claim before first determining whether: 1) the appeal is timely; 2) the issue has been preserved in a post-sentence motion or at the sentencing hearing; 3) the appellate brief includes a Rule 2119(f) statement; and 4) a substantial question is raised. **See Commonwealth v. Edwards**, 194 A.3d 625, 636 (Pa.Super. 2018); Pa.R.A.P. 2119(f) ("An appellant who challenges the discretionary aspects of a sentence in a criminal matter shall set forth in a separate section of the brief a concise statement of the reasons relied upon for allowance of appeal with respect to the discretionary aspects of a sentence").

Here, Madera's appeal is timely, but he has failed to preserve his sentencing claim before the trial court. He also failed to include a Rule 2119(f) statement in his brief. He has therefore waived his final issue. ***See Commonwealth v. Hudson***, 820 A.2d 720, 727 (Pa.Super. 2003); ***Commonwealth v. Williams***, 787 A.2d 1085, 1088 (Pa.Super. 2001).

Judgment of sentence affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 3/12/2026